UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MANUEL GONZALEZ, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No. 17-cv-05877 |
| v. | ) | |
| | ) | |
| REAL TIME RESOLUTIONS, INC., | ) | Jury Demanded |
| | ) | |
| DEFENDANT. | ) | |

## COMPLAINT

Plaintiff, Manuel Gonzalez, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Illinois Collection Agency Act, 225 ILCS 452, *et seq.* ("ICAA"), and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1367 as to Plaintiff's state law claims.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendant transacts substantial business here.

## STANDING

3. Defendant sent Plaintiff a collection letter falsely stating it may be required to report a discharge of indebtedness to the IRS.

4. Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any false statements and false threats. *E.g.* Genova v. IC Sys., Inc., No. CV 16-5621, 2017 WL 2289289, at *3 (D.N.J. May 25, 2017).

5. Plaintiff has thus suffered an injury as a result of Defendant's conduct, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6. Plaintiff, Manuel Gonzalez ("Plaintiff"), is a resident of the State of Illinois, from whom Defendant attempted to collect a delinquent consumer debt allegedly owed for a defaulted Check N' Go consumer loan account. Plaintiff is thus a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA, and a debtor as defined at 225 ILCS 425/2.

7. Defendant Real Time Resolutions, Inc. ("RTR"), is a Texas corporation with its principal place of business at 1349 Empire Central Drive, 150 Dallas, Texas. Its registered agent is C T Corporation System, located at 208 So. LaSalle Street Suite 814, Chicago, IL 60604. (Exhibit A, Record from Illinois Secretary of State).

8. RTR is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. RTR holds a collection agency license from the State of Illinois. (Exhibit B, Record from the Illinois Department of Financial and Professional Regulation).

10. RTR regularly collects or attempts to collect defaulted consumer debts, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

## **FACTUAL ALLEGATIONS**

11. According to Defendant, Plaintiff incurred an alleged debt for goods and services used for personal purposes, originally for a Check N' Go consumer pay day loan account ("alleged debt"). The alleged debt is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

12. Due to his financial circumstances, Plaintiff could not pay any debts, and the alleged debt went into default.

13. RTR subsequently began collecting on the alleged debt.

14. On or about May 15, 2017, Defendant mailed Plaintiff a collection letter ("Letter"). (Exhibit C, Collection Letter).

15. The Letter conveyed information about the alleged debt, including an account number, the identity of the creditor, and an account balance.

16. The Letter was a thus a communication as that term is defined at §1692a(2) of the FDCPA.

17. The Letter offered Plaintiff several settlement options.

18. The Letter further states, in relevant part:

> **The IRS requires certain amounts that are discharged as a result of the cancellation of debt to be reported on a Form 1099 C. You will receive a copy of the Form 1099 C if one is required to be filed with the IRS.**

19. In fact, Defendant may not report a discharge of indebtedness to the IRS for cancellation of many types of debt, including that of Plaintiff's.

20. Treasury Regulation 1.6050P requires that an applicable entity report a cancellation or discharge of indebtedness of $600 or more, and only if, there has occurred an

"identifiable event" described in paragraph (b)(2) of that section. 26 C.F.R. § 1.6050P-1(b)(2)(F).

21. There are numerous exceptions to the reporting requirement, including the following:

> **(d) Exceptions from reporting requirement**
>
> **(1) Certain bankruptcy discharges -**
>
> **(2) Interest. The discharge of an amount of indebtedness that is interest is not required to be reported under this section.**
>
> **(3) Non-principal amounts in lending transactions. In the case of a lending transaction, the discharge of an amount other than stated principal is not required to be reported under this section. For this purpose, a lending transaction is any transaction in which a lender loans money to, or makes advances on behalf of, a borrower (including revolving credits and lines of credit). . . .**

(26 C.F.R. § 1.6050P-1(b)(2)(F)).

22. RTR failed to list the exceptions to its apparent reporting requirement.

23. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (2) The false representation off—**
>
> > **(A) The character, amount, or legal status of any debt**
>
> **. . . (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . .**
>
> **. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

24. RTR made a materially false statement, and threatened an action its client could not lawfully take, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5) and 1692e(10) when it stated it may be required to report Plaintiff's debt to the IRS.

25. RTR made a materially deceptive statement, in violation of 15 U.S.C. §§ 1692e, and 1692e(10) when it failed to disclose the exceptions that apply to its client's apparent reporting requirement.

26. In fact, there was no set of circumstances under which the IRS could be involved in the proposed settlement as the total of the alleged debt was $537.75. Even if RTR cancelled the *entire* debt, the cancellation would be below the $600.00 reporting threshold.

27. 225 ILCS 425/9 of the Illinois Collection Agency Act provides as follows:

> **. . . (21) Disclosing or threatening to disclose information relating to a debtor's debt to any other person except where such other person has a legitimate business need for the information or except where such disclosure is permitted by law.**

28. RTR threatened to disclose information relating to Plaintiff's debt to the IRS, in violation of 225 ILCS 425/9, when it threatened that it may be required to report a discharge of indebtedness when there was no set of circumstances under it would be able to do so.

29. A private right of action exists for a violation of the ICAA. *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

30. Statutes providing for administrative remedies in Illinois (e.g. the revocation of a license, etc.) imply a civil right of action. *Trull v. GC Servs. Ltd. P'ship*, 961 F. Supp. 1199, 1206 (N.D. Ill. 1997).

31. RTR's statement falsely raises the specter of the IRS should a consumer fail to pay the alleged debt in full.

32. RTR could have avoided any problems by simply not referencing the IRS in its letter.

33. The unsophisticated consumer may feel pressured by the statement Defendant made in its Letter into paying more of the alleged debt to avoid an IRS audit. *See, Bautz v. ARS Nat'l Servs., Inc.*, No. 16CV768JFBSIL, 2016 WL 7422301, at *9 (E.D.N.Y. Dec. 23, 2016) (analyzing the statement "Department Stores National Bank will report forgiveness of debt as required by IRS regulations").

34. Conditional language (e.g. "*certain* amounts"), particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability. *Gonzales v. Arrow Fin. Servs.*, *LLC,* 660 F.3d 1055 (9th Cir. 2011) (Cited by *Lox v. CDA, Ltd*., 689 F.3d 818 (7th Cir. 2012).

35. Moreover, violations of the FDCPA which would lead a consumer to alter his or her course of action as to whether to pay a debt, or which would be a factor in the consumer's decision making process, are material. *See Lox v. CDA*, 689 F.3d 818, at 827. Here, RTR's misrepresentation that the IRS would become involved if he paid less than the full amount of the debt owed could cause Plaintiff to feel that he was required to pay more of the alleged debt than Defendants were offering in settlement to avoid IRS involvement.

36. RTR's false tax statements are made to support a two-tiered collection effort. The first tier is aimed at lower income consumers, to instill fear by including references to the IRS and the federal government in hopes that they will pay at least the settlement amount, to reduce the impact of any government reporting. The second tier is aimed at consumers who have gotten back on their feet, and will be afraid of being reported to the IRS for paying the lower settlement amount, and thus will pay the higher (full) amount of the alleged debt.

37. The use of false statements in either situation is prohibited by the Fair Debt Collection Practices Act.

38. The letter additionally offered several methods of settling the account, including:

> **Non-Resolution Option:**
> **If you choose to enter into this arrangement, please note that it is only temporary. Once this plan expires you will need to make new arrangements.**
>
> **Six Month Payment Plan**
>
> *Non-Resolution Option:*
> **6 Temporary Monthly Payments of $50.00**

39. It is unclear and seemingly indiscernible what the rights and obligations of either party would be if Plaintiff decided to pursue this option of payment.

40. Plaintiff, and the unsophisticated consumer, would believe that if they entered into the Six Month Payment Plan, and made timely payments, that they would not be subjected to further collection efforts or sued over the alleged debt.

41. However, RTR would retain its right to sue Plaintiff even if Plaintiff made timely payments on the Six Month Payment Plan.

42. In fact, the Six Month Payment Plan offers Plaintiff no benefit at all, and RTR's suggestion that is does is deceptive as a matter of law.

43. RTR's deception was made to coerce Plaintiff into making small payments on the alleged debt while receiving no consideration from RTR.

44. RTR contributed to the confusion by listing the Six Month Payment Plan among other Settlement options.

45. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading**

> **representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (2) The false representation off—**
>
> > **(A) The character, amount, or legal status of any debt**
>
> **. . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

46. RTR made a materially false statement in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10) when it offered a settlement option that provided no benefit to Plaintiff.

47. Plaintiff experienced negative emotions about Defendant's collection actions, including annoyance, aggravation, and other garden variety emotional distress.

48. Collection communications are to be interpreted under the "unsophisticated consumer" standard. *See*, *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I- FAIR DEBT COLLECTION PRACTICES ACT

49. Plaintiff re-alleges the paragraphs above as if set forth fully in this count.

50. RTR made a materially false statement, and threatened an action its client could not lawfully take, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5) and 1692e(10) when it stated it may be required to report Plaintiff's debt to the IRS.

51. RTR made a materially deceptive statement, in violation of 15 U.S.C. §§ 1692e, and 1692e(10) when it failed to disclose the exceptions that apply to its client's apparent reporting requirement.

52. RTR made a materially false statement in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10) when it offered a settlement option that provided no benefit to Plaintiff.

WHEREFORE, Plaintiff respectfully asks this Court enter judgment in favor of Plaintiff, and against Defendant as follows:

  A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

  B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

  C. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

  D. Such other or further relief as the Court deems proper.

## COUNT II—ILLINOIS COLLECTION AGENCY ACT

53. Plaintiff re-alleges the above paragraphs as if set forth fully in this count.

54. RTR threatened to disclose information relating to Plaintiff's debt to the IRS, in violation of 225 ILCS 425/9, when it threatened that it may be required to report a discharge of indebtedness when there was no set of circumstances under it would be able to do so.

WHEREFORE, Plaintiff asks that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

  A. Compensatory and punitive damages;

  B. Costs; and,

  C. Such other and further relief as is appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

             By: s/Celetha Chatman
               One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
Holly McCurdy
**Community Lawyers Group, Ltd.**
73 W. Monroe Street, Suite 514
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 265-3227
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com
hmccurdy@communitylawyersgroup.com